IN THE UNTIED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHELLE BRAKEMAN,

Plaintiff,

v.

JO ANNE B. BARNHART,

Defendant.

Civil No. 05-666-MO

OPINION AND ORDER

FLOYD H. SHEBLEY
419 Fifth Street
Oregon City, OR 97045

Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

MICHAEL McGAUGHRAN
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

Attorneys for Defendant

**MOSMAN, J.,**

Plaintiff Michelle Brakeman seeks judicial review of the Social Security Commissioner's final decision denying her application for disability insurance benefits ("DIB") and supplemental social security income ("SSI") benefits under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Commissioner's final decision is reversed and remanded.

## BACKGROUND

Born in 1969, Ms. Brakeman left school at the eleventh grade. Tr. 240, 333, 396.[1] Between 1985 and October 2001 she worked as a cook, housekeeper, slot machine assembler, wood stacker, vinyl installer and bullet inspector. Tr. 72, 93.

Ms. Brakeman alleges disability since May 17, 2000 due to numbness and chronic tendinitis in her left hand, depression, attention-deficit disorder and post-traumatic stress disorder ("PTSD"). Tr. 71, 80. In reaching a decision after her hearing, the Administrative Law Judge ("ALJ") found Ms. Brakeman "not entirely credible" and rejected testimony of two physicians. Tr. 22, 25. Ms. Brakeman seeks review of these findings.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing one to five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520(a), 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. The first three

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer on September 14, 2005.

steps are not presently disputed. Ms. Brakeman challenges the ALJ's evaluation of the evidence and her conclusions at steps four and five.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); Social Security Ruling ("SSR") 96-8p. The ALJ uses this information to determine if the claimant can perform her past work at step four.

The initial burden of establishing functional limitations rests upon the claimant. If the process reaches step five, the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that claimant can perform. *Yuckert*, 482 U.S. at 141-42; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

**THE ALJ'S FINDINGS**

The ALJ found Ms. Brakeman "partially credible," based upon Ms. Brakeman's alleged discrepancies in reporting her wrist and mental impairments and evidence of secondary gain. Tr. 18, 19.

The ALJ found Ms. Brakeman's ability to work moderately limited by her depression and wrist impairment. Tr. 25. She evaluated Ms. Brakeman's RFC:

> The claimant has the residual functional capacity to lift 25 pounds frequently and 50 pounds occasionally. She can sit, stand and walk without limitation. She can handle only occasional forceful use of her non-dominant left hand. She can tolerate short routine tasks

> with no close attention to detail. She can handle no more than limited interaction with coworkers and the general public.

Tr. 25.

At step four, the ALJ found that Ms. Brakeman's RFC did not preclude her from performing her past relevant work as a bullet inspector. Tr. 25. Accordingly, the ALJ determined Ms. Brakeman was not disabled under the Act at any time through the date of her decision. Tr. 25. Alternatively, the ALJ elicited testimony regarding step five from a vocational examiner who suggested Ms. Brakeman could also work as marking clerk or seedling sorter. Tr. 467-68.

**STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and detracts from the Commissioner's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) *citing Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The reviewing court "may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). In reviewing a credibility finding, the reviewing court must consider whether the Commissioner provided "clear and convincing reasons" for finding a claimant not credible. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). This court also looks for "clear and convincing reasons" in reviewing rejection of physician testimony. *Magallanes*, 881 F.2d at 751. Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.2d at 750; *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Ms. Brakeman contends the ALJ failed to accurately assess her RFC because the ALJ improperly discredited Ms. Brakeman's testimony, improperly dismissed a treating source physician as non-treating, improperly dismissed a report signed by a physician and did not adequately address evidence relating to Ms. Brakeman's physical and mental impairments.

### 1. Ms. Brakeman's Credibility

Ms. Brakeman alleges a wrist impairment and depression. The ALJ found her "less than fully credible" regarding both allegations. Tr. 25. The ALJ's reasoning for suspecting Ms. Brakeman's credibility is based upon Ms. Brakeman's inconsistent statements to physicians, apparent gaps in Ms. Brakeman's medication compliance and the ALJ's suspicion of secondary gain. Tr. 23. The support for Ms. Brakeman's wrist and mental impairments differs. Accordingly, this court's credibility determination divides regarding Ms. Brakeman's wrist impairment and her mental impairments.

#### a. Ms. Brakeman's Wrist Impairment

In her credibility finding, the ALJ first noted discrepancies observed by a consulting family practitioner, Dr. Greenleaf, who examined Ms. Brakeman's wrist. Dr. Greenleaf noted that Ms. Brakeman responded positively to a pinprick test; the ALJ suggests this contradicts Ms. Brakeman's reported numbness. Tr. 18. Dr. Greenleaf did not make this analysis himself. Dr. Greenleaf could not clinically confirm Ms. Brakeman's reported discoloration of her left hand, but he did not discredit her report. Tr. 255. An orthopedic surgeon, Dr. Coe, also felt Ms. Brakeman's reported pain exceeded clinical findings. Tr. 161.

At her hearing Ms. Brakeman testified that at times the pain in her hands is so severe she cannot carry a cup of coffee without spilling it. Tr. 438. The ALJ dismissed this testimony, saying, "such an allegation on its face strains credibility." Tr. 19. Notably, this testimony regarded both hands, while medical records support continuing injury to the left hand only.

The ALJ may find Ms. Brakeman not credible by "employing ordinary techniques of credibility evaluation," including weighing inconsistent statements by the claimant. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). The ALJ may also consider the claimant's alleged impairment in light of objective medical evidence. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Because Ms. Brakeman's complaints regarding the extent of her wrist impairment are both inconsistent and unverified by objective medical evidence, the ALJ appropriately found her not credible.

**b. Ms. Brakeman's Mental Impairments**

Between 1999 and 2004, medical and Social Security administrative sources repeatedly recorded empiric observations of Ms. Brakeman's depressed affect, confusion, irritability and anxiety. Tr. 82, 127, 172, 212, 218-19, 220, 223, 242, 250-51, 260, 265, 270, 353, 334, 368, 372. Social Security services reported that she cried during appointments and interviews, could not focus and required assistance in simple clerical tasks. Tr. 82, 127, 260. In June 2000 Ms. Brakeman was hospitalized following a suicide attempt by overdose. Tr. 170-73. At this time she was placed on involuntary hold because she showed little insight into her action and could not assure clinical staff she would not harm herself again. Tr. 251-52. She subsequently received follow-up care at Deschutes County Mental Health ("DCMH") where she attended

counseling and behavior modification classes. Tr. 333, 391. During this period she would drive to the hospital parking lot and ruminate upon her suicide attempt and hospitalization, reportedly in fear of another suicidal episode. Tr. 368, 449. In December 2003 Ms. Brakeman was again hospitalized and tranquilized for a second suicide attempt. Tr. 329-331.

The ALJ must provide clear and convincing reasons for discrediting a claimant's testimony regarding severity of symptoms. *Smolen*, 80 F.3d at 1283. The ALJ's findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). In reaching her findings, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing claimant's inconsistent statements regrading her symptoms. *Id*. Here the medical evidence and objective third party sources support Ms. Brakeman's claim of functional difficulty due to mental impairments.

**c. Other Credibility Factors**

The ALJ questioned Ms. Brakeman's credibilty for three additional reasons: because Ms. Brakeman did not obtain prescribed medication throughout the period in question, because she allegedly inconsistently reported her medical history, and because Ms. Brakeman presently makes an application for benefits based upon disability. Tr. 5, 19, 23.

The ALJ suggests Ms. Brakeman does not suffer from the severe impairments she claims

because she did not seek treatment for periods within the record. Tr. 5, 19. Ms. Brakeman clearly and repeatedly stated to her practitioners and Social Security staff that she had lost her insurance and could not afford medications during parts of the period in question. Tr. 79, 120, 243, 333. The ALJ points out that DCMH provided Ms. Brakeman with some medication, but the extent of this support is not documented in the record. Tr. 22. The Commissioner cannot fault a claimant for failing to seek treatment she cannot afford. *Gamble v. Chater*, 68 F.3d 319, 320-21 (9th Cir. 1995).

The ALJ also suggests that Ms. Brakeman's mental impairments are in the record largely by Ms. Brakeman's report, writing that Ms. Brakeman, "provided a diagnosis by history which misled her care provider." Tr. 23. Read as a whole, the record shows treating and evaluating medical sources consistently documented Brakeman's emotional distress. Between 1999 and 2004, medical and social security administrative sources repeatedly recorded empiric observations of Ms. Brakeman's depressed affect, confusion, irritability and anxiety. Tr. 82, 127, 143, 156, 212, 218-9, 220, 223, 242, 251, 250, 260, 265, 270, 353, 334, 368, 372.

It is significant that Ms. Brakeman's intelligence is estimated at "low average," and she appears confused and distraught throughout the record. Tr. 243. The evaluating psychologist reported that Ms. Brakeman could not recall all of her medications. Tr. 241.

The ALJ concluded her credibility analysis saying, "While Ms. Brakeman's circumstances are not unsympathetic, they also give rise to concerns about the influence of secondary gain, a factor difficult to ignore in light of other credibility concerns." Tr. 19. This is insufficient support for a negative credibility finding. Discounting Ms. Brakeman's credibility on this basis

was erroneous. *See, e.g., Ratto v. Sec'y, Dept. Health and Human Servs.*, 839 F. Supp. 1415, 1428-29 (D. Or. 1993).

This court accepts the ALJ's determination Ms. Brakeman's wrist impairment is less extensive than Ms. Brakeman claims it is. This court does not accept the ALJ's determination that Ms. Brakeman exaggerated and inconsistently reported her mental impairments or that these impairments were "not acute" for a twelve month period. Tr. 22, 23. The ALJ's findings do not provide clear and convincing reasons showing she did not arbitrarily reject Brakeman's testimony regarding her mental impairments. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see Orteza*, 50 F.3d at 750. Accordingly, the ALJ's credibility determination regarding Ms. Brakeman's wrist is sustained, but her credibility determination regarding Ms. Brakeman's mental impairments cannot be sustained.

**2. Medical Source Statements**

Ms. Brakeman contends the ALJ improperly evaluated medical evidence regarding her physical and mental impairments. Specifically, Ms. Brakeman suggests Dr. Williams should be evaluated as a treating physician, her mental impairments precipitated involuntary loss of functioning, and her wrist impairment lasted longer than twelve months.

**a. Treating Physicians**

Between June 2000 and January 2004, Ms. Brakeman was a patient at DCMH. Tr. 314. DCMH utilized a team approach in psychiatric care, including psychiatrists, nurse practitioners, social workers and behavior modification classes. Drs. Hyde and Williams were managing psychiatrists at DCMH during this period. In May 2002 Dr. Williams replaced Dr. Hyde at

DCMH and assumed direction of Ms. Brakeman's care. Tr. 151. Drs. Hyde and Williams successively filled the same role in Ms. Brakeman's treatment. In reviewing Ms. Brakeman's treatment history at DCMH, the ALJ stated that Dr. Williams was not a treating physician and "did not review medical records." Tr. 23. Contrary to this statement, Dr. Williams both reviewed and contributed to Ms. Brakeman's medical records. Tr. 370-71. The ALJ also said Dr. Williams "did not provide counseling," but his clinical notes document an office visit, discussion or counseling, and telephone follow-up with Ms. Brakeman. *Id*.

There is no bright line rule determining when a doctor-patient relationship becomes a "treating" relationship; one visit may suffice. *Benton v. Barnhart*, 331 F.3d 1030, 1037-38 (9th Cir. 2003). Ms. Brakeman testified she visited Dr. Williams four times and referred to both Dr. Williams and Dr. Hyde as her treating doctors for medication management. Tr. 370-71, 445. Clinical notes show that during this time Dr. Williams prescribed antidepressant and anti-anxiety medications and directed a treatment plan. Tr. 370-71, 333. Contrary to the ALJ's finding, their relationship is a treating relationship. *Benton*, 331 F.3d at 1037-38.

**b. Ms. Brakeman's Mental Health and Loss of Functioning**

Ms. Brakeman submits that her mental health issues precluded her from functioning between May 2001 and her June 2004 hearing. Her primary care physician, Dr. Corso, diagnosed and treated her for depression, ADHD, and PTSD between 1998 and 2001. Dr. Corso made his diagnosis by evaluation rather than formal psychometric testing, but consistently noted Ms. Brakeman's clinical symptoms, family history of ADHD, and responses to medications supporting his diagnosis. Tr. 210-23. A specialist is not required for psychiatric diagnosis.

*Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

The ALJ states, "In this case there is no documented evidence of depression (or any other acute emotional disturbance) that has been acutely symptomatic for twelve months or longer." Tr. 22. The record contradicts this statement. The ALJ overlooked Dr. Corso's records and did not note the extent of DCMH records. These show Ms. Brakeman's depression began in at least 1998 and worsened, requiring hospitalization for suicide attempts in 2002 and again in 2003. Tr. 210-23, 329-32.

In writing that Ms. Brakeman's ADHD amounted to "nothing more than self diagnosis," the ALJ directly contradicts the record established by Drs. Corso, Hyde, and Williams, without offering reasons. This is erroneous. If the ALJ intended to reject opinions of a treating physician, she must give "clear and convincing reasons" for disregarding such testimony. *Magallanes*, 881 F.2d at 751.

Following her 2002 suicide attempt, Ms. Brakeman received ongoing care and counseling from DCMH. In June 2004 mental health counselor and therapist Dodi Reinhoehl wrote an open letter on DCMH letterhead surmising Ms. Brakeman's diagnoses of major depression, PTSD, ADD and borderline personality disorder. Tr. 391. Ms. Reinhoel's letter reports Ms. Brakeman's status earlier determined by DCMH physicians, but does not indicate Ms. Reinhoel made the diagnosis herself. Tr. 391, 270-71, 370-71.

The ALJ found Ms. Reinhoehl's analysis insufficient, repeatedly emphasizing that Ms. Reinhoehl is not a physician or Ph.D. psychologist. Tr. 22. The ALJ also suggested that Ms. Reinhoehl wrote findings signed by Dr. Hyde, thus dismissing them. Tr. 20. A team

approach to healthcare is clearly permissible. *Benton*, 331 F.3d at 1039. For this reason, findings signed by Dr. Hyde should be considered his medical findings and opinions. Tr. 267.

Finally, it appears the ALJ misread the report submitted by Ph.D. psychologist Michelle Whitehead. Tr. 19. Dr. Whitehead did not definitively find PTSD, but she did document Ms. Brakeman's "low average" IQ, her inability to concentrate, and her inability to accomplish daily living activities on her own. These findings were based upon clinical observations rather than Ms. Brakeman's report. Tr. 242-43. Dr. Whitehead did not believe Ms. Brakeman was capable of handling SSI funds. Tr. 244. Together, these findings suggest a degree of limitation not reflected in the RFC the ALJ surmised. Tr. 25.

**c. Duration of Ms. Brakeman's Wrist Impairment**

Ms. Brakeman also claims the ALJ failed to find that her wrist impairment lasted twelve months or longer and failed to calculate her RFC based upon statements by reviewing physicians.

In 1996 Ms. Brakeman developed reported numbness in her left arm, leading to radial nerve surgery on her left elbow. Tr. 74, 161. In May 2000 Ms. Brakeman injured her wrists in the course of work assembling and cleaning slot machine doors. Tr. 161. Dr. Coe, an orthopedic surgeon, confirmed Ms. Brakeman's reported pain in examination, though he felt her pain exceeded clinical findings. Tr. 161. Ms. Brakeman attended physical therapy in June 2000. Tr. 177. In July 2000 Ms. Brakeman re-injured her left hand falling off a porch. Tr. 166. Subsequent imaging studies found a metacarpal fracture and she was fitted with a cast. Tr. 364-65.

Reviewing physicians found Ms. Brakeman's reports of limited mobility and pain

consistent with the tendinitis diagnosis established in the record. Reviewing physicians also found Ms. Brakeman credible. Tr. 259, 304. These sources suggested an RFC including "occasional to never overhead reaching, lifting, twisting, turning, pinching, grasping, handling large objects/small objects, keyboarding, hammering or otherwise use of hands, fingers, wrist or left upper extremity." Tr. 300. Generally, a treating or examining physician's testimony is given more weight than a reviewing physician's testimony. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The ALJ's greater reliance upon treating and examining physicians regarding Ms. Brakeman's wrist is appropriate.

In calculating Ms. Brakeman's RFC with fewer restrictions than reviewing sources suggested, the ALJ also relied in part upon her negative credibility determination. Tr. 18-19. Because the ALJ's credibility finding is sustained regarding Ms. Brakeman's wrist impairments, Ms. Brakeman's testimony regarding her ongoing wrist pain need not be reconsidered. *See Tonapetyan*, 242 F.3d at 1147; *Smolen*, 80 F.3d at 1284.

## **REMAND**

This court has discretion to remand for further proceedings or for immediate payment of benefits. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings.

Remand for further administrative proceedings "is appropriate 'where additional administrative proceedings could remedy defects'; but where remand would only delay the receipt of benefits," the court should enter judgment for the claimant. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989), quoting *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985). Courts

generally award benefits "when no useful purpose would be served by further administrative proceedings" or "when the record has been fully developed and there is not sufficient evidence to support the ALJ's conclusion." *Rodriguez*, 876 F.2d at 763.

The errors above do not warrant immediate award of benefits. Ms. Brakeman does not specifically establish the effect of her depression, impaired concentration, and irregular moods on her RFC. For the reasons above, Ms. Brakeman's must be found credible regarding her mental impairments, Dr. Williams must be re-assessed as a treating physician, and Dr. Hyde must be credited as the author of the report he signed. A new RFC should be calculated.

It is not clear from the record that the ALJ would be required to find Ms. Brakeman disabled if the improperly rejected evidence were credited as true. Accordingly, further proceedings are necessary. *Harman*, 211 F.3d at 1778; *Smolen*, 80 F.3d at 1292.

**CONCLUSION**

For these reasons, this court reverses the decision of the Commissioner and remands this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

Dated this 31st day of March, 2006.

/s/ Michael W. Mosman
Michael W. Mosman
United States District Judge